UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PHYLLIS MACOMBER, | : |
| Plaintiff, | : Civil Action No. 3:08-2718 |
| v. | : |
|  | : **OPINION** |
| MICHAEL J. ASTRUE COMMISSIONER OF SOCIAL SECURITY | : |
| Defendant. | : |

**WOLFSON, United States District Judge**

Plaintiff Phyllis Macomber ("Plaintiff" or "Macomber") appeals from the final decision of the Commissioner of Social Security ("Commissioner"), Michael J. Astrue, denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The issue before this Court is whether Plaintiff is entitled to disability insurance benefits under Title XVI of the Social Security Act. A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months. Upon reviewing the administrative record, the Court finds that Administrative Law Judge's ("ALJ") decision denying benefits is supported by substantial evidence. Thus, the final decision of the Commissioner is **AFFIRMED**.

I.      PROCEDURAL HISTORY

On July 6, 2004, Plaintiff filed an application for supplemental security income ("SSI"), alleging disability beginning January 1, 1989[1]. On January 10, 2005, the claim was denied, and once again upon reconsideration on June 20, 2005 (upon reconsideration). Plaintiff then filed a written request for a hearing on July 27, 2005, and was granted a hearing on October 23, 2006 in Newark, New Jersey. The Honorable Joel H. Friedman, United States ALJ, in a decision dated June 28, 2007, denied Plaintiff's claim. Upon reconsideration on April 1, 2008, the Notice of Appeals Council once again denied her request for benefits. Plaintiff now appeals the Notice of Appeals Council Action decision that denied review and upheld the ALJ's decision of June 28, 2007.

II.     STATEMENT OF FACTS

Macomber alleges disability based on leg pain as a result of lower peripheral vascular disease. Admin. R. at 405-539. She also suffers from hypertension and the accompanying side effects of her prescription drug, Toprol. Id. In addition, Plaintiff has a history of anxiety and depression – during a psychological evaluation conducted in October, 2006, her Global Assessment Functioning ("GAF") score was recorded at 40. Id. at 530.

From 1972 to 1979, and intermittently until 2001, Macomber worked in food catering, where her duties involved food preparation. Id. at 55-58, 567. Macomber experienced pain and swelling in her left leg for several years. Id. at 133-166, 173-176, 189-194, 195-199, 200-301, 334-543. She began treatment for the pain in June of 2004 after developing discoloration and swelling. Id. at 16, 276.

---

[1] This was later amended to July 6, 2004, the date her application was filed.

Robert S. White, APN,[2] at the Keyport Primary Care Center reported grossly normal results from his musculoskeletal exams on July 27, 2004 and September 13, 2004. Id. at 17, 134, 137. The reports also found that Macomber's lungs were clear, pulse was normal, and there were no findings of edema, cyanosis or clubbing in her extremities. Macomber's heart had a regular rate and rhythm with no gallops, rubs or murmurs.

A month later, on October 29, 2004, Macomber visited Dr. Justin Fernando primarily complaining of pain and swelling in her left leg, and difficulty climbing stairs. Dr. Fernando included in his report:

> Chief Complaint: Claimant complains of pain in her left leg and swelling of the ankles extending up her calf of the left leg. She complains of being unable to walk beyond 1 or 2 blocks and climbing 1 flight of stairs because of the pain in the left leg.

Id. at 167-168. Dr. Fernando made a number of findings, including that Plaintiff: (1) had a normal gait; (2) could half squat; (3) needed no help changing for the exam; (4) was able to rise from a chair without difficulty; and (4) could get on and off of a table without assistance. Additionally, her left foot had edema from the calf to the dorsum of the foot, and the posterior tibial pulse could not be felt in her left foot. There were no significant varicosities or trophic changes. She had a full range of motion, including her hips, knees and ankles, and there were no strength, reflex or sensory abnormalities. The examination reaffirmed that her heart had no murmurs, gallops or rubs. A chest x-ray also revealed no active disease. Id.

Macomber again visited White on December 3, 2004, where there was 1+ edema in her left leg. Later, on December 29, 2004, an exercise arterial Doppler revealed no hemodynamically significant lesions of either lower extremity. "Post exercise pulse volume recordings showed

---

[2] The Court has determined that the initials "APN" refer to an Advanced Practice Nurse.

good wave form and amplitudes bilaterally. The segmental arterial pressures do not show any significant gradient bilaterally." Id. at 173.

On two separate visits to White on March 1 and 10, 2005, Macomber's leg showed signs of improvement, as there were no reports of edema. Id. at 202-212. On April 7, 2005, the arterial Doppler of her thighs, calves and ankles demonstrated no hemodynamically significant stenosis. White suspected "mutisegmental atherosclerosis involving the left leg with a mild stenosis in the left superficial femoral artery and a mild stenosis in the left popliteal artery." Id. On June 14, 2005, licensed psychologist Jan S. Cavanaugh[3] recorded that Macomber's gait appeared to be normal, and that " Ms. Macomber reports that she is able to dress, bathe, and groom herself. She sometimes needs assistance. She reports that she can cook and prepare food, do general cleaning, laundry, shopping. . ." Id. at 326-328. Cavanaugh assessed her thought processes as coherent and goal directed, and her demeanor and responsiveness to questions was cooperative. Id. at 326. Finally, the doctor diagnosed Macomber with a chronic adjustment disorder with depressed mood. Id. at 328.

When Plaintiff visited St. Michael's Medical Center on June 21, 2005, the results of her physical revealed that she had normal coronary arteries, normal ejection fraction, and 40% stenosis on the right renal artery. There was no edema found in either check up on October 27 or November 7, 2005. Id. at 405-430. However, traces of edema were found in Macomber's left leg by Randy Shafritz, M.D. on January 5, 2006. The report also concluded that changes in her skin color were consistent with early venous stasis disease. Her lungs were clear and her heart had a regular rate and rhythm. Id. at 499-510. Dr. Shafritz also noted that Macomber did not comply with instructions to wear a compression stocking. Id. at 513.

---

[3] It is unclear from the record whether the Social Security Administration referred Macomber to Cavanaugh or whether she visited the doctor on her own volition.

On March 15, 2006, Plaintiff underwent radio frequency ablation of her small saphenous vein in her left leg due to venous insufficiency. Id. at 526. After the procedure on August 10, 2006, reports from the Keyport Primary Care Center did not document any traces of edema or lung blockage, and her heart rate and rhythm were regular. Id. at 406. During an October 12, 2006 checkup, the doctor reported chronic thrombus in the left proximal common femoral vein with no change, and left deep venous reflux. Id. at 539.

Macomber was referred to Dr. Baharlias[4] for a psychological evaluation of mental status, and visited the physician on September 22, 2006. In his report, the diagnosis for Macomber included: (1) depressive disorder associated with a general medical condition; (2) heart disease; (3) vascular disease; (4) hypertension; (5) generalized anxiety disorder; (6) personality disorder with prominent features of dependency and avoidance; and (7) family relational problems Id. at 530. Notably, the ALJ did not give this evaluation significant weight, finding that it was not supported by the doctor's own objective findings or by the other evidence in the record. Id. at 15. During this visit, the doctor also observed Plaintiff's posture and gait to be unremarkable. Id. at 528-530.  A stress test on September 23, 2006 by the treating cardiologist Parveen Uppal revealed the left ventricular ejection fraction at 74% with normal wall motion function, small to medium sized apical attenuation artifact, small to medium sized anterior attenuation artifact, and there was no evidence of ischemia. Id. at 533.

The Court notes that findings from White were not given significant weight, namely because he is not a physician and therefore not an acceptable medical source as defined by the Social Security Administration. Id. at 17. As a result, the ALJ concluded that there were no

---

[4] Macomber was referred to Baharlias by Gail A Spence, Assistant Supervising Attorney for the SSI Project of the Legal Services of New Jersey, Edison Office. Admin. R. 527, who is also Plaintiff's counsel on record in the case at bar.

doctors' reports that require Plaintiff to keep her leg elevated, although she testified that she believed it minimized the swelling. Id. at 18, 573.

### Decision and Findings of the ALJ from the June 28, 2007 hearing

Plaintiff testified at the hearing on October 23, 2006, that she could not work because it was impossible for her to stand for a long period of time. Id. at 562-567. She claimed that she could stand up for approximately fifteen minutes. Id. at 573. She also reported pain and swelling in her leg whereby she could not make it through the day. Plaintiff's testimony revealed that a sit-down job was impractical because she was required to elevate her leg throughout the day due to her pain, and sitting down for too long would aggravate her back. Id. Since her injury, Plaintiff claimed that she did not have any part-time work. Macomber testified that she had never seen a psychiatrist, psychologist, or any other mental health profession. Id. at 562-567.

When describing her past job, Plaintiff testified that she was on her feet on a concrete floor, and complained to her boss that standing hurt her leg. Although her boss allowed her to sit, she claimed that it was impossible to sit because she had to get lunch meats for sandwiches or stand and cook. She also testified that she had done this type of work for the last fifteen years. Id. at 562-580.

The ALJ made the following findings and decision:

1. The claimant has not engaged in substantial gainful activity since July 6, $^{2004}$, the SSI application date (20 § § CFR 416.920(b) and 416.971 *et seq*).

2. The claimant has the following severe impairments: venous insufficiency of the left leg and hypertension (20 § CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Park 404, Subpart P, Appendix 1 (20 § § CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work.

5. The claimant is unable to perform any past relevant work (20 § CFR 416.965).

6. The claimant was born on May 2, 1958, and was 46 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 § CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 § CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 § CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 § § CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 6, 2004, the date the application was filed (20 § § CFR 416.920(g)).

See Admin. R. at 14-19 (ALJ's June 28, 2007 decision). In accordance with these findings, the ALJ held that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act, and therefore Plaintiff's claim of disability benefits was denied. Id. at 19.

### III.   DISCUSSION

#### A.   Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see

McQueen v. Comm'r of Soc. Sec., 2009 U.S. App. LEXIS 8800 (3d Cir. Apr. 23, 2009) (citing Matthews v. Apfel, 239 F. 3d 589, 592 (3d Cir. 2001)). The Commissioner's decisions as to questions of fact are conclusive upon a reviewing court if supported by substantial evidence in the record. 42 U.S.C. § 405(g); see Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008) (citing Knepp v. Apfel, 204 F. 3d 78, 83 (3d Cir. 2000)). While the court must scrutinize the entire record to determine whether the Commissioner's findings are supported by such evidence, Gober v. Matthews, 574 F. 2d 772, 776 (3d Cir. 1978), the standard is "highly deferential." Jones v. Barnhart, 364 F. 3d 501, 503 (3d Cir. 2004). Indeed, substantial evidence is defined as more than a mere scintilla, but less than a preponderance. C&C Marine Maint. Co. v. Bellows, 538 F.3d 293, 296 (3d Cir. 2008) (citing Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orquera v. Comm'r of Soc. Sec., 2008 U.S. App. LEXIS 19329 (3d Cir. Sept. 9, 2008) (citing Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). Further, a reviewing court will make individualized disability determinations based on evidence adduced at a hearing. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); see Heckler v. Campbell, 461 U.S. 458, 467, 76 L. Ed. 2d 66, 103 S. Ct. 1952 (1983) (noting that the Act requires individualized determination based on evidence adduced at a hearing); see also 42 U.S.C. § 405(b) (requiring consideration of each individual's condition and stating that an individual may request that a disability determination be based on evidence adduced at a hearing). Even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. See Simmonds v. Heckler, 807 F. 2d 54, 58 (3d Cir. 1986).

  **B.  Standard for Entitlement of Benefits**

Disability insurance benefits may not be paid under the Social Security Act ("SSA) unless Plaintiff first meets the statutory insured status requirements. See 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see Plummer, 186 E. 3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C § 423(d)(2)(A).

The SSA established a five-step sequential process for an ALJ's evaluation of whether a person is disabled. See 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); see Sykes, 228 F. 3d at 262-64. A claimant currently engaged in substantial gainful activity is automatically denied disability benefits. See 20 C.F.R. § 4041520(b); see also Sykes, 228 F. 3d at 262-64. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1420(c); see also Sykes, 228 F. 3d at 262-264. Basic work activities relate to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling reaching, carrying or handling." Id. A claimant who does not have a severe impairment is not disabled. 20 C.F.R. § 404.1520(c); see Plummer, 186 F. 3d at 428. Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the

9

"Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that her impairments are equal in severity to or meet those on the Impairment List, the claimant has satisfied her burden of proof and is automatically entitled to benefits. See 20 C.F.R. §404.1520(d); see also Sykes, 228 F. 3d at 262-64. If the specific impairment is not listed, the ALJ will consider the impairment most similar to decide whether it is medically equivalent. See 20 C.F.R. 404.1526(a). If there is more than one, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. Id. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equivalent in severity to all the criteria for the one most similar. Williams, 970 F. 2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether she retains the residual functional capacity to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(d); Sykes, 228 F. 3d at 262-64. If the claimant is able to perform her previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Sykes, 228 F. 3d at 262-264. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F. 3d at 428. Finally, if it is determined that the claimant is no longer able to perform her previous work, the burden of production shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Sykes, 228 F. 3d at 262-64; Plummer, 186 F. 3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.

C.     **Plaintiff's Arguments on Appeal**

Plaintiff first contends that the ALJ failed to incorporate Macomber's nonexertional limitations in his assessment at step five of the sequential evaluation process, and this failure is in violation of <u>Sykes</u>, 228 F. 3d at 259. Plaintiff claims that the testimony and medical evidence, apparently strengthened by the psychological evaluation conducted by Dr. Baharlias, reveal that she suffers from severe nonexertional limitations. Additionally, Plaintiff asserts that the ALJ disregarded AR01-1(3) by concluding that she was not disabled because she had residual functional capacity for the full range of sedentary work. Plaintiff finds support for this argument in the ALJ's failure to consult the Dictionary of Occupational Titles Index ("DOT") during the hearing and the lack of a vocational expert's testimony concerning Plaintiff's ability to complete the full range of sedentary work in light of her nonexertional limitations. Plaintiff also contends that the medical record provides no evidence that supports the ALJ's conclusion that Plaintiff can perform sedentary work. Rather, Plaintiff suggests that her testimony demonstrates her inability to stand for two hours, and that she would not be able to sit for as long as six hours. Next, Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints of pain, which is contrary to the Social Security ruling 88-13 and 95-5p. Finally, Plaintiff indicates that the ALJ does not discuss any reason for concluding that her testimony was not entirely credible.

    1.  Step Five: Whether Plaintiff Is Able to Perform Work in the National Economy

The ALJ found that Plaintiff demonstrated the existence of a medically determinable disability that precluded her from resuming her previous employment as a food caterer. After this step, the burden shifted to the Commissioner to demonstrate that Macomber was capable of performing substantial gainful activity in the national economy. <u>Stunkard v. Secretary of Heath and Human Services</u>, 841 F. 2d 57, 60 (3d Cir. 1988) (citing <u>Kangas v. Bowen</u>, 823 F.2d 775,

777 (3d Cir. 1987); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979)). Analysis at this step is dependant on whether a claimant suffers solely from exertional limitations, or from both exertional and nonexertional limitations. Exertional impairments involve limitations on a claimant's ability to meet certain strength requirements of a job (i.e. lifting, pushing or pulling). Stunkard, 841 F. 2d at 60 (citing 20 C.F.R. § 404.1545(b)). Conversely, nonexertional impairments involve limitations such as postural and manipulative impairments that do not affect a claimant's physical strength but may nevertheless prevent a claimant from engaging in gainful employment. Id. (citing 20 C.F.R. § 404.1545(d)). When there are nonexertional claims, AR01-1(3) and Sykes, 228 F. 3d at 273 require the testimony of a vocational expert (or other similar evidence).

Plaintiff argues that the ALJ failed to incorporate Macomber's nonexertional limitations in his assessment at step five, allegedly in violation of Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000). These nonexertional limitations, Macomber asserts, were apparent from her testimony and the medical evidence. Essentially, Plaintiff is claiming that the analysis at step five should have been based on AR01-1(3), which, as aforementioned, guides the ALJ to assess wholly or partial nonexertional claims with testimony from a vocational-type expert.

The Court finds that the ALJ did not err when it concluded that Plaintiff did not have nonexertional limitations; therefore, AR01-1(3) would be inapplicable to Macomber's case and a vocational expert is not required. Indeed, the ALJ's conclusion was supported by "substantial evidence in the record." 42 U.S.C. § 405(g); see Knepp, 204 F. 3d at 83. The ALJ indicated that Jan S. Cavanaugh, Ph.D., noted no history of outpatient or inpatient psychiatric treatment on June 14, 2005. In addition, Dr. Cavanaugh noticed that the Plaintiff's attention, concentration and memory were all intact, and that her thought processes were coherent and goal directed.

Admin. R. 325-328. Dr. Baharlias only buttressed Dr. Cavanaugh's findings on September 22, 2006, finding Macomber well spoken with logical thought processes and no apparent cognitive impairments. While Dr. Baharlias also reported that Plaintiff was seemingly anxious and depressed, she was not, at that point, taking any medication for anxiety or depression and was not under the care of any mental health workers. Despite his findings that "Ms. Macomber's main psychiatric, psychological problem is in the area of anxiety and depression" and that her current GAF score is 40, the ALJ correctly pointed out that because she has sought no mental health treatment and had been off of anti-depressants for two years, it was not possible to know the duration of the GAF or whether her symptoms would be readily responsive to treatment. Id. at 15, 530. In addition, the ALJ did not give the GAF score significant weight because it was not supported by Dr. Baharlias's aforementioned objective findings (including his thorough observations of Macomber's mental state) or other evidence in the record. In evaluating similar reports, the ALJ is afforded substantial discretion to determine the weight, if any, to be given to a medical report if the report does not reflect the specific applicant's condition and is not supported by other evidence. Miller v. Comm'r of Soc. Sec., 172 F. 3d 303, 305-06 (3d Cir. 1999). Further, a physician's ultimate conclusion on disability is not binding on the ALJ. Id. at 36-07. Therefore, there was substantial evidence in the record to support the ALJ's finding that Plaintiff did not suffer from nonexertional limitations.

 Plaintiff's testimony revealed that she suffered from dizziness and headaches, apparently from her medication. She also claimed that she suffered from a headache practically everyday, cried from the pain, and did not enjoy being around other people anymore. Admin. R. at 559-572. The ALJ, however, concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not

13

entirely credible." Id. at 16. Plaintiff argues that her testimony, along with the medical evidence, reveals that she suffers from severe nonexertional limitations. The ALJ has the authority to make credibility determinations of Plaintiff's testimony, specifically with regard to pain and other subjective complaints. Malloy v. Comm'r of Soc. Sec., 306 Fed. Appx. 761, 765 (3d Cir. N.J. 2009) (citing VanHorn v. Schweiker, 717 F. 2d 871, 873 (3d Cir. 1983)). In addition, rejection of subjective testimony must be based on substantial evidence in the record. VanHorn, 717 F. 2d at 873-74. Nevertheless, the ALJ has the authority to render an independent judgment in light of the medical findings and other evidence regarding the true extent of Plaintiff's complained symptoms. LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988). Therefore, the ALJ did not abuse his discretion when he evaluated, and subsequently discredited, Plaintiff's testimony as the record provides ample support for such a decision.

Indeed, the ALJ provided a detailed analysis of Plaintiff's physicians' reports, and observed that the swelling in Plaintiff's legs was not constant – in fact, it was described by the evidence as being occasional, and some doctor reports even noted it as being mild. In addition, no medical report required Macomber to keep her leg elevated. Even more compelling is the fact that Macomber failed to comply with instructions to wear a compression stocking, and she reported to some doctors that she was capable of performing a full range of sedentary work. Admin. R. 513. For example, Dr. Fernando on October 29, 2004, reported that her daily activities included cooking cleaning, shopping, showering and dressing herself – all of which Plaintiff did without an assistive device. Id. at 168. In addition, the evidence indicated that Plaintiff's cardiac tests had essentially been within normal limits. Admin. R. at 14-18. Taken together, the ALJ could conclude, based on the substantial evidence, that Macomber's testimony may not have been entirely credible.

      2.   Whether Plaintiff Can Perform Sedentary Work

Plaintiff next asserts that there is no evidence in the medical records to support the ALJ's conclusion that Macomber can perform sedentary work. Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R § 404.1567. Although a sedentary job is defined as one that involves primarily sitting, it goes without saying that a certain amount of walking and standing is often necessary to carry out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. Id. Social Security Ruling 96-9p defines the meaning of "occasionally" as occurring from very little up to one-third of the time; therefore, standing and walking would generally total no more than about two hours of an eight-hour workday, while sitting would normally total about six hours of an eight-hour workday. Plaintiff primarily relies on her testimony at the hearing to demonstrate that she is unable to stand for two hours and/or sit for as long as six hours, rendering her unable to perform sedentary work.

The ALJ must consider and weigh all of the non-medical evidence before him, including claimant's allegations of pain. Burnett v. Comm'r of Soc. Sec., 220 F. 3d 112, 122 (3d Cir. 2000). These "allegations of pain and other subjective symptoms," however, "must be supported by objective medical evidence." Hartranft v. Apfel, 181 F. 3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529). The ALJ considered all of Macomber's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, in compliance with the requirements of 20 CFR 416.929 and SSR's 96-4p and 96-7p, and also considered opinion evidence based on the requirements of CFR 416.927 and SSR's 96-2p, 96-5p, 96-6p and 06-3p. As aforementioned, the ALJ found that her impairments could produce the alleged symptoms, but that the intensity and effects of these symptoms were not entirely credible. Admin. R. at 16. This assessment is consistent with the evidence analyzed

15

by the ALJ. For example, Plaintiff claimed that she had to keep her leg elevated for a large part of the day. However, no doctor reported any such treatment option. Other discrepancies between her testimony and doctors' reports provide substantial evidence for the ALJ to conclude that she could perform sedentary work. In particular, some doctors reported that Plaintiff was capable of performing standard everyday chores. Admin. R. 168, 277, 278, 327. Dr. Fernando reported that Plaintiff had a mild to moderate limitation for prolonged standing and walking on October 29, 2004, and Jan S. Cavanaugh records state that Macomber reports being able to cook, prepare food, do general cleaning, laundry, and shopping.  Id. at 327.

### 3. Whether the ALJ Failed to Properly Use His Discretion While Evaluating Plaintiff's Subjective Complaints of Pain

Plaintiff further alleges that the ALJ erred in his decision because he improperly evaluated her subjective complaints of pain, contrary to Social Security ruling 88-13 and 95-5p. To that end, Plaintiff contends that the ALJ's decision does not provide any reason for finding Macomber's testimony as not credible. To that end, Plaintiff relies on Social Security Ruling 95-5p, which explains that the ALJ is not free to accept or reject allegations of pain on the basis of personal observation, but rather must discuss and analyze objective medical evidence and other evidence, including complaints of pain. Because the Court does not have to find explicit statements justifying the weight given to testimony, but rather, must find evidence in the record to support the ALJ's conclusion, the ALJ did not err in finding Plaintiff's testimony unconvincing. See VanHorn 717 F. 2d at 873. In compliance with 95-5p, the ALJ thoroughly discussed Plaintiff's numerous doctors' visits, concluding that the evidence shows her swelling to be occasional, sometimes noted by doctors as mild. Admin. R. at 14-18. The ALJ also pointed out that Plaintiff, on her own volition without advice from a physician, often kept her leg

16

elevated. Id. Lastly, Macomber's complaints regarding her nonexertional limitations were not given significant weight because she (1) had not sought mental health treatment; (2) was off of the anti-depressant Lexapro for two years; (3) did not have repeated episodes of decomposition of extended duration; (4) did not have restriction of activities of daily living; and (5) did not have difficulties in maintaining social functioning, concentration, persistence or pace at more than a mild level of severity. Id. Therefore, the ALJ evaluated Macomber's subjective complaints of pain as not being credible, and this conclusion was amply supported by evidence in the record.

## IV.     CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the decision is affirmed and Plaintiff's Complaint is dismissed.


Dated June 17, 2009                              /s/ Freda L. Wolfson
                                                 Freda L. Wolfson, U.S.D.J.